# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

*In re* BARBER/ESPINOZA

Docket No. 167745. Argued on application for leave to appeal May 7, 2025. Decided July 31, 2025.

The Department of Health and Human Services (DHHS) petitioned the Lenawee Circuit Court, Family Division, to take jurisdiction over CB and ME and terminate the parental rights of respondent-mother to the minor children after CB made allegations of sexual abuse. Specifically, CB disclosed that between the ages of two and nine she had been sexually abused by two of respondent's male friends, that respondent was aware of the abuse, and that respondent allowed one man to abuse CB in exchange for drugs. After CB's disclosures, DHHS sought to remove the children from respondent's care and custody and terminate her parental rights, arguing that termination at the initial dispositional hearing was warranted under MCL 722.638(1)(b), (2), and (3); that statutory grounds for termination were present; and that termination was in the children's best interests. At the conclusion of the preliminary hearing, the court, Anna Marie Anzalone, J., authorized the petition, suspended respondent's parenting time, and ordered that the children remain with their nonrespondent-father. The court stated that because DHHS sought termination of respondent's parental rights, it would not order a case service plan. At the combined adjudication and termination hearing, CB testified that when she was approximately eight years old, respondent left CB in a room with a man, permitting him to sexually abuse her, including anal and oral penetration. When respondent returned to the room, she dismissed CB's complaint that her "butt was bleeding." CB explained that she knew respondent traded her in exchange for drugs because the man came over to use drugs with respondent and then respondent left the room after getting high with the man. The trial court found CB's testimony credible and concluded that grounds for adjudication existed under MCL 712A.2(b)(1) and (2) and that DHHS appropriately sought termination at the initial disposition because, as set forth in MCL 722.638(2), respondent was a suspected perpetrator or placed CB at an unreasonable risk of harm due to her failure to take reasonable steps to intervene to eliminate the risk. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (parent's act caused the physical injury or physical or sexual abuse of child or sibling and injury or abuse is reasonably likely to happen again), (b)(*ii*) (parent failed to prevent sexual abuse, and sexual abuse is reasonably likely to happen again), and (j) (reasonable likelihood of harm if child is returned to the parent), concluding that termination was in the children's best interests. Respondent appealed, and the Court of Appeals, GADOLA, C.J., and PATEL and YOUNG, JJ., reversed and remanded. ___ Mich App ___ (September 19, 2024)

(Docket No. 369359). The Court concluded that aggravated circumstances were not present under MCL 722.638(1)(a)(*ii*) because respondent was not the perpetrator who committed the act of criminal sexual conduct involving penetration. Given that conclusion, the Court determined that (1) DHHS was not required to file a petition under MCL 722.638(1); (2) MCL 722.638(2) therefore did not apply; and (3) the trial court's finding of aggravated circumstances and associated ruling that DHHS did not have to make reasonable efforts to reunify the children and respondent were clearly erroneous. The Court of Appeals further concluded that the trial court erred by failing to advise respondent of her right to appeal the removal order pursuant to MCR 3.965(B)(15) and that respondent was prejudiced by that error because, had the court instructed respondent of her appellate rights at the time of the removal order, she could have successfully argued that aggravated circumstances were not present before the case proceeded immediately to termination. The children's lawyer-guardian ad litem sought leave to appeal, and the Supreme Court ordered oral argument on the application. ___ Mich ___; 15 NW3d 599 (2025).

In a unanimous opinion by Chief Justice CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under MCL 712A.19a(2)(a), DHHS is not required to make reasonable efforts to reunify the child and family when there is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in MCL 722.638(1) and (2). If the court makes a judicial determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family, and the trial court may terminate parental rights at the initial disposition as contemplated by MCL 712A.19b(4). MCL 722.638(1) requires a finding that (1) a parent or other listed individual (2) abused the child or a sibling of the child, and (3) the abuse included one or more listed circumstances, one of which is, relevant to this case, criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate, MCL 722.638(1)(a)(*ii*). The parent or other listed individual must have abused the child, but the parent or other listed individual need not have committed the act of criminal sexual conduct; so long as the parent or listed individual "abused" the child, and the abuse "included" criminal sexual conduct involving penetration, the trial court may find that the circumstances of MCL 722.638(1)(a)(*ii*) have been demonstrated. A respondent-parent subjects their child to aggravated circumstances, as provided in MCL 722.638(1)(a)(*ii*), when the parent facilitates criminal sexual conduct involving penetration of the child, even if the parent does not personally commit the act of criminal sexual conduct; therefore, MCL 722.638(1) was satisfied in this case. MCL 722.638(2) was also satisfied, because respondent was suspected of placing her child at an unreasonable risk of harm due to her failure to take reasonable steps to intervene to eliminate the risk. Therefore, under MCL 712A.19a(2)(a), reasonable efforts to reunify the family were not required, and the trial court did not err when it terminated respondent's parental rights at the initial disposition. The trial court plainly erred by failing to advise respondent of her right to appeal the court's order removing her children from her care and custody as required under MCR 3.965(B)(15), but the error did not affect respondent's substantial rights. The judgment of the Court of Appeals was reversed, and the order of the trial court terminating respondent's parental rights was reinstated.

1. In most circumstances, DHHS has an affirmative duty to make reasonable efforts to achieve reunification before a court may terminate parental rights. Only in rare circumstances provided by statute may the trial court hold a combined adjudicative and dispositional hearing in which parental rights may be terminated at the initial dispositional hearing. One such narrow exception is provided in MCL 712A.19a(2)(a), which excuses DHHS's duty to provide reasonable efforts to reunify the child and family if there is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in MCL 722.638. To excuse the reasonable-efforts requirement under MCL 712A.19a(2)(a), the trial court must make findings consistent with both MCL 722.638(1) and MCL 722.638(2), and it must find by clear and convincing evidence that aggravated circumstances exist. If the court makes a judicial determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family, and the trial court may terminate parental rights at the initial disposition as contemplated by MCL 712A.19b(4). If the trial court has determined that reasonable efforts are not required because of the existence of aggravated circumstances, it may move forward and terminate a respondent's parental rights only if it also finds that the statutory grounds for termination have been proved by clear and convincing evidence and that a preponderance of the evidence supports that termination is in the child's best interests.

2. MCL 722.638(1)(a) is satisfied for purposes of MCL 712A.19a(2)(a) if the court finds that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included a circumstance enumerated in MCL 722.638(1)(a)(*i*) through (*vi*), including, relevant to this case, "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate," MCL 722.638(1)(a)(*ii*). There is no requirement under MCL 722.638(1)(a) that the parent or other listed individual who has abused the child or a sibling of the child has personally committed an act constituting an enumerated circumstance, so long as the abuse perpetrated by the parent or other listed individual *included* such a circumstance. Therefore, MCL 722.638(1)(a)(*ii*) is satisfied when a parent or other listed individual is the perpetrator of abuse and the abuse "included" criminal sexual conduct involving penetration, even if the parent did not commit the act of criminal sexual conduct involving penetration. In determining whether a respondent's actions met the aggravated circumstances outlined in MCL 722.638(1), courts must consider whether the respondent has "abused the child." MCL 722.622(g) defines "child abuse" as including "harm or threatened harm to a child's health or welfare that occurs through . . . sexual exploitation . . . by a parent[.]" Under MCL 722.622(r), sexual exploitation refers to "allowing, permitting, or encouraging a child to engage in prostitution[.]" In turn, "prostitution" means "the act or practice of engaging in sex acts and especially sexual intercourse in exchange for pay." In this case, because respondent engaged CB in prostitution, she sexually exploited CB and, therefore, abused her; further, CB's testimony confirmed that the abuse included criminal sexual conduct involving penetration, thereby satisfying MCL 722.638(1).

3. MCL 722.638(2) is satisfied for purposes of MCL 712A.19a(2)(a) if the court finds that a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, even if the parent did not personally commit the act constituting an enumerated aggravated

circumstance. When respondent sexually exploited CB, she placed CB at an unreasonable risk of harm, not only by failing to take reasonable steps to intervene to eliminate the risk, but by actively creating the risk of harm; therefore, the record evidence also supported that MCL 722.638(2) was satisfied. The same analysis applied with respect to ME because MCL 722.638(1) is satisfied if a parent has abused "a *sibling* of the child" and the abuse included criminal sexual conduct involving penetration. Given that both MCL 722.638(1)(a)(*ii*) and MCL 722.638(2) were satisfied, DHHS was excused from making reasonable efforts to reunify the family pursuant to MCL 712A.19a(2)(a). Therefore, the trial court was permitted to terminate respondent's parental rights at the initial dispositional hearing, and the Court of Appeals erred by holding otherwise.

4. MCR 3.965(B)(15) provides that "[i]f the court orders removal of the child from a parent's care or custody, the court shall advise the parent . . . of the right to appeal that action." At the time of the preliminary hearing, respondent shared joint legal custody with the nonrespondent-father and was entitled to parenting time with the children. The trial court's order eliminated respondent's ability to participate in decisions about their care or exercise parenting time. For purposes of MCR 3.965(B)(15), the suspension of these rights constituted a "removal" from respondent's care and custody, even though the order did not remove the children from her physical custody. Given that it was a removal order, the trial court plainly erred when it failed to advise respondent of her right to appeal the order. However, the error did not affect her substantial rights. Respondent argued that the error precluded her from immediately challenging the trial court's incorrect finding that reasonable efforts toward reunification were not required. However, the trial court properly determined that MCL 712A.19a(2)(a) excused the reasonable-efforts requirement, and respondent could not show that, had she been advised of her appellate rights after the preliminary hearing, the outcome of the proceedings would have been different. The Court of Appeals correctly held that the trial court erred when it failed to advise respondent of her right to appeal the removal order, but the Court erred when it determined that the error was outcome-determinative.

Court of Appeals' judgment reversed, and trial court's order terminating respondent's parental rights reinstated.

Justice BOLDEN, concurring, agreed in full with the majority's conclusion and analysis of the facts presented in this case but wrote separately to clarify that aggravated circumstances are found only in rare situations and must be considered on a case-by-case basis. The existence of aggravated circumstances presents the exception to the rule that parental rights are not to be terminated absent reasonable efforts to reunify the child and the family, as well as the general rule that child protective proceedings involve two distinct phases. The relevant statutes and court rules governing child protective proceedings must be followed closely to ensure that all interests are met, particularly when an exception to the general two-phase proceedings process applies, such as when aggravated circumstances are present. Aggravated circumstances are present under MCL 712A.19a(2)(a) if all elements of both MCL 722.638(1) and (2) are met. If DHHS determines that both subsections are met, DHHS has an affirmative obligation to petition a court to terminate parental rights and to seek termination at the initial disposition. When those circumstances are present, the court may exercise its discretion to terminate a respondent's parental rights during the initial dispositional hearing. As occurred here, exploiting one's child

through prostitution may meet the statutory elements, depending on the facts, circumstances, and evidence of each case. Justice BOLDEN agreed with the decision to reverse the judgment of the Court of Appeals and reinstate the order of the trial court terminating respondent's parental rights.

Justice THOMAS did not participate because she may have independent knowledge regarding this case.

Justice HOOD did not participate because the Court considered this case before he assumed office.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 31, 2025

STATE OF MICHIGAN

SUPREME COURT

*In re* BARBER/ESPINOZA, Minors.

No. 167745

BEFORE THE ENTIRE BENCH (except THOMAS and HOOD, JJ.)

CAVANAGH, C.J.

As a general rule in child protective proceedings, the Department of Health and Human Services (DHHS) must make reasonable efforts to reunify the child and family in all cases. One exception to this broad rule is where "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided" in MCL 722.638(1) and MCL 722.638(2). MCL 712A.19a(2)(a). In this case, we consider whether a respondent-parent has subjected their child to aggravated circumstances, as provided in MCL 722.638(1)(a)(*ii*), when the parent facilitates criminal sexual conduct involving penetration of the child but does not herself commit the alleged act of criminal sexual conduct. We hold that such circumstances satisfy MCL 722.638(1)(a)(*ii*). As applied in

this case, we conclude that respondent abused one of her two minor children, CB, via sexual exploitation that included criminal sexual conduct involving penetration, even though respondent herself did not directly commit criminal sexual conduct involving penetration. And, because respondent was suspected of placing CB at an unreasonable risk of harm due to her failure to take reasonable steps to intervene to eliminate that risk, MCL 722.638(2) is also satisfied. Therefore, DHHS was not required to make reasonable efforts to reunify the family pursuant to MCL 712A.19a(2)(a), and we conclude that the trial court did not err when it terminated respondent's parental rights to both of her children at the initial disposition.

We also consider whether the trial court committed plain error by failing to advise respondent of her right to appeal the court's removal of her children from her care and custody, see MCR 3.965(B)(15), and if so, whether the error requires reversal. We hold that this was plain error, but respondent has failed to demonstrate that it affected her substantial rights. Consequently, we reverse the judgment of the Court of Appeals.

## I. STATUTORY FRAMEWORK

An overview of the relevant statutory framework is useful to understand the complex nature and process of child protective proceedings. To begin, child protective proceedings consist of two distinct phases: the adjudicative phase and the dispositional phase. *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (April 14, 2025) (Docket No. 166509); slip op at 6. The adjudicative phase determines whether the trial court may exercise jurisdiction over the child, MCL 712A.2(b). If jurisdiction is exercised, the dispositional phase determines what action, if any, will be taken on behalf of the child to

2

ensure the child's safety and well-being. *Id.* at ___; slip op at 6. One of the actions that the trial court may take is to terminate parental rights. See MCL 712A.19b.

In most circumstances, however, DHHS has an affirmative duty to make reasonable efforts to achieve reunification before a court may terminate parental rights. *In re Hicks*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Therefore, only in rare circumstances provided by statute may the trial court hold a combined adjudicative and dispositional hearing in which parental rights may be terminated at the initial dispositional hearing. See MCL 712A.19b(4); MCR 3.977(E). Specifically, as relevant here, MCL 712A.19a(2) provides a narrow exception for when DHHS may forgo reasonable reunification efforts. It instructs that "[r]easonable efforts to reunify the child and family must be made in all cases except if . . . [t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 712A.19a(2)(a).[1]

In turn, MCL 722.638 provides, in relevant part:

(1) The department shall submit a petition for authorization by the court under [MCL 712A.2(b)] if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

---

[1] MCL 712A.19a(2) provides three additional exceptions to the reasonable-efforts requirement: circumstances in which the parent has been convicted of an enumerated crime, MCL 712A.19a(2)(b); circumstances in which the parent's rights to the child's siblings were previously involuntarily terminated and the parent failed to rectify the conditions that led to that previous termination, MCL 712A.19a(2)(c); and circumstances in which the parent is required to register under the Sex Offenders Registration Act, MCL 712A.19a(2)(d). None of these other exceptions is relevant to this appeal.

3

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under [MCL 712A.19b].

The trial court must find by clear and convincing evidence that aggravated circumstances exist in order to excuse the reasonable-efforts requirement. *In re Simonetta*, 507 Mich 943, 943 (2021). If the trial court has determined that reasonable efforts are not required because of the existence of aggravated circumstances, it may move forward and terminate a respondent's parental rights only if it also finds that the statutory grounds for termination have been proved by clear and convincing evidence, MCL 712A.19b(3), and that a preponderance of the evidence supports that termination is in the child's best interests, MCL 712A.19b(5). See *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (stating that "[a] court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence"); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013) (holding that "whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence"); MCR 3.977.

4

## II. FACTS & PROCEDURAL HISTORY

Respondent is the mother of two minor children, CB and ME. At the time DHHS initiated these proceedings, 13-year-old CB and 9-year-old ME were in their father's physical custody, while respondent was entitled to unsupervised parenting time with ME three weekends a month and therapeutic parenting time with CB.

In February 2023, DHHS petitioned the trial court to take jurisdiction over the children and terminate respondent's parental rights after CB made allegations of sexual abuse. CB disclosed that she had been sexually abused by two of respondent's male friends, that respondent was aware of the abuse, and that respondent allowed one man to abuse CB in exchange for drugs.[2] This abuse occurred when CB was between two and nine years old. In the petition, DHHS sought to remove the children from respondent's care and custody and submitted that termination at the initial disposition was warranted pursuant to MCL 722.638(1)(b), (2), and (3).[3] The petition further alleged that the statutory grounds for termination were present and that termination was in the children's best interests.

At the conclusion of the preliminary hearing, the trial court authorized the petition, suspended respondent's parenting time, and ordered that the children remain with their

---

[2] The petition also stated that CB witnessed respondent using intravenous drugs.

[3] As previously stated, MCL 722.638(1) requires DHHS to submit a petition seeking the trial court's jurisdiction in certain circumstances. If the conditions described in MCL 722.638(1) are met, MCL 722.638(2) requires DHHS to request termination at the initial disposition if the parent is also suspected of perpetrating abuse or placing the child at an unreasonable risk of harm because of the parent's failure to take reasonable steps to intervene to eliminate the risk. Finally, MCL 722.638(3) instructs DHHS to take certain actions if it is considering petitioning for termination at the initial disposition, even if MCL 722.638(1) was not triggered.

father.  The trial court concluded that because DHHS was seeking termination, it would not order a case service plan.  The trial court did not advise respondent of her right to appeal the removal decision pursuant to MCR 3.965(B)(15).[4]

After multiple adjournments, the combined adjudication and termination proceeding took place over two days in December 2023.  At the hearing, CB testified that she had "bad memories" of respondent because respondent had allowed CB to be sexually assaulted and because respondent had used drugs in front of CB.  CB explained that when she was approximately eight years old, respondent permitted a man to sexually abuse her, including anal and oral penetration.  CB explained that respondent left CB in the room with the man and when respondent returned, CB told respondent that her "butt was bleeding," but respondent dismissed her complaints.  When asked how she knew that respondent traded her in exchange for drugs, CB explained that the man came over to use drugs with respondent and then respondent left the room after getting high with the man.  The trial court found that CB's testimony was credible.

At the end of the hearing, the trial court concluded that grounds for adjudication existed, citing both MCL 712A.2(b)(1) and MCL 712A.2(b)(2).  Next, it noted that DHHS sought termination at the initial disposition pursuant to MCL 722.638.  The court then concluded that, "based on the testimony that I've heard today, it is reasonable that [DHHS] move for termination at initial disposition due to the parent being a suspected perpetrator or . . . placing the child at an unreasonable risk of harm due to failure to take reasonable steps to intervene to eliminate that risk."  Finally, the trial court concluded that statutory

_____

[4] "If the court orders removal of the child from a parent's care or custody, the court shall advise the parent . . . of the right to appeal that action."  MCR 3.965(B)(15).

6

grounds for termination had been proved, citing MCL 712A.19b(3)(b)(*i*) (parent's act caused the physical injury or physical or sexual abuse of child or sibling and injury or abuse is reasonably likely to happen again), (b)(*ii*) (parent failed to prevent sexual abuse, and sexual abuse is reasonably likely to happen again), and (j) (reasonable likelihood of harm if child is returned to the parent), and that termination was in the children's best interests.

Respondent appealed, and the Court of Appeals reversed the trial court's termination order in a published opinion. *In re Barber/Espinoza*, ___ Mich App ___, ___, ___; ___ NW3d ___ (September 19, 2024) (Docket No. 369359); slip op at 1, 13. The children's lawyer-guardian ad litem (LGAL) sought leave to appeal in this Court, and we ordered oral argument on the application, instructing the parties to address the following:

> (1) whether reasonable efforts to reunify the child and the respondent must be made where the respondent was not the perpetrator of criminal sexual conduct involving penetration, but instead facilitated, encouraged, or allowed such conduct by a third party in exchange for some benefit to the respondent, see MCL 712A.19a(2)(a), MCL 722.638(1) and (2); (2) if so, whether the lack of reasonable reunification efforts in this case was plain error affecting the respondent's substantial rights, see generally *In re Ferranti*, 504 Mich 1, 29[; 934 NW2d 610] (2019); (3) whether [DHHS] satisfied the requirements of MCL 722.638(3); (4) if so, whether the termination of the respondent's parental rights should be affirmed under that provision; and (5) whether the failure to advise the respondent of her right to appeal following the preliminary hearing was plain error affecting the respondent's substantial rights, see MCR 3.965(B)(15). [*In re Barber/Espinoza*, ___ Mich ___, ___; 15 NW3d 599, 599 (2025).]

### III. AGGRAVATED CIRCUMSTANCES

This case requires us to determine whether reasonable efforts to reunify the children and respondent were not required pursuant to MCL 712A.19a(2)(a) because "a parent . . . has abused the child . . . and the abuse included . . . [c]riminal sexual conduct involving penetration," MCL 722.638(1)(a)(*ii*), and "a parent is a suspected perpetrator or

7

is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk," MCL 722.638(2).

"We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Woodman v Dep't of Corrections*, 511 Mich 427, 440; 999 NW2d 463 (2023) (quotation marks and citation omitted). "[W]e may not read into the statute what is not within the Legislature's intent as derived from the language of the statute." *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003).

## A. COURT OF APPEALS

In this case, the panel concluded that CB unquestionably alleged abuse via criminal sexual conduct involving penetration, attempted penetration, or assault with intent to commit penetration. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 4. However, while respondent allegedly facilitated the abuse, there was no allegation that she committed the sexual abuse. *Id*. at ___; slip op at 4. The panel, therefore, identified the key question as "whether criminal sexual conduct against a minor child enumerated in MCL 722.638(1)(a)(*ii*) must be perpetrated by 'a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home' to constitute an aggravated circumstance warranting termination at the initial disposition." *Id*. at ___; slip op at 4-5.

The panel concluded that "MCL 722.638(1)(a) clearly contemplates abuse perpetrated by only certain limited categories of people." *Id*. at ___; slip op at 7. Therefore,

"[w]here, as here, the perpetrators were neither a parent, guardian, or custodian of CB, and never resided with the children, the conduct at issue is not an 'aggravated circumstance' for purposes of MCL 722.638(1)." *Id*. at ___; slip op at 7-8. And, because the abuse was not an aggravated circumstance under MCL 722.638(1), DHHS was not required to file a petition under that subsection. Because the petition was not "mandated under subsection (1)," MCL 722.638(2) did not apply. *Id*. at ___; slip op at 8. As a result, the requirements of MCL 722.638(1) and (2) were not met, and the trial court's finding of aggravated circumstances and associated ruling that DHHS did not have to make reasonable efforts at reunification were clearly erroneous. *Id*. at ___; slip op at 8.

## B. ANALYSIS

We disagree with the Court of Appeals' statutory interpretation.

Under MCL 712A.19a(2)(a), in order to conclude that aggravated circumstances exist that excuse the requirement of reasonable efforts toward reunification, a trial court must make findings consistent with both MCL 722.638(1) and MCL 722.638(2).[5] The first relevant finding required by MCL 722.638(1)(a) is whether "a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child . . . ." In determining whether respondent's

---

[5] We agree with amicus curiae Michigan Probate Judges Association and other amici joining their position that MCL 722.638 is a procedural statute that controls when DHHS must take certain actions. Specifically, MCL 722.638(1) tells DHHS when it must file a jurisdictional petition, and MCL 722.638(2) tells DHHS when said mandatory petition triggers a requirement to request termination at the initial disposition. MCL 712A.19a(2), however, substantively incorporates MCL 722.638, setting the parameters for when the trial court may excuse reasonable efforts aimed at reunification if the aggravated circumstances outlined in MCL 722.638(1) and (2) exist.

9

actions met the aggravated circumstances outlined in MCL 722.638(1), we must consider whether she has "abused the child."[6] The Legislature has pertinently defined "child abuse" to include "harm or threatened harm to a child's health or welfare that occurs through . . . sexual exploitation . . . by a parent[.]" MCL 722.622(g). Sexual exploitation refers to "allowing, permitting, or encouraging a child to engage in prostitution[.]" MCL 722.622(r).[7] The term "prostitution" is not defined by statute, but its dictionary meaning is "the act or practice of engaging in sex acts and especially sexual intercourse in exchange for pay." *Merriam-Webster.com Dictionary*, prostitution <https://www.merriam-webster.com/dictionary/prostitution> (accessed July 18, 2025) [https://perma.cc/Q6CH-KJJW]; see also *Black's Law Dictionary* (12th ed) (defining "prostitution" as "[t]he practice or an instance of engaging in sexual activity for money or its equivalent; commercialized sex").[8] Here, CB testified that respondent allowed a man to sexually abuse CB in exchange for drugs. This constitutes engaging CB in prostitution. Because respondent engaged CB in prostitution, she sexually exploited CB and, thus, abused her.

---

[6] There is no question that respondent was CB's parent and, therefore, met the first part of the statute.

[7] MCL 722.622(r) actually defines "[*c*]*onfirmed* sexual exploitation," which means "a confirmed case that involves allowing, permitting, or encouraging a child to engage in prostitution . . . ." (Emphasis added.) In turn, "[c]onfirmed case" is defined as one in which "the department has determined, by a preponderance of evidence, that child abuse or child neglect occurred by a person responsible for the child's health, welfare, or care." MCL 722.622(n). We see no reason to distinguish between the definition of "confirmed sexual exploitation" and "sexual exploitation" for present purposes.

[8] *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017) ("When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase.").

But child abuse perpetrated by a listed individual is not independently sufficient to satisfy the requirements of MCL 722.638(1). Such abuse committed by a listed offender must also have "included" certain circumstances listed under MCL 722.638(1)(a)(*i*) through (*vi*). The relevant additional circumstance alleged in this case is "[c]riminal sexual conduct involving penetration[.]" MCL 722.638(1)(a)(*ii*).[9] The Court of Appeals concluded that MCL 722.638(1)(a)(*ii*) could not apply here because the panel believed that an unnamed individual, not respondent, was the perpetrator of abuse. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 4-5, 7. Thus, the panel concluded that the "perpetrators were neither a parent, guardian, or custodian of CB, and never resided with the children," so MCL 722.638(1)(a) was not met. *Id*. at ___; slip op at 7-8. We disagree. Relevant to the facts of this case, MCL 722.638(1)(a)(*ii*) requires that the abuse *included* criminal sexual conduct involving penetration; it does not require the abuser to be the individual who committed the act of criminal sexual conduct involving penetration. Put another way, MCL 722.638(1)(a)(*ii*) is satisfied when a parent or other listed individual is the perpetrator of abuse, and the abuse "included" criminal sexual conduct involving penetration; however, that does not mean that the parent must have committed the act of criminal sexual conduct involving penetration. As discussed, respondent abused CB via sexual exploitation. See MCL 722.622(g) and (r). CB's testimony confirmed that the

---

[9] MCL 722.638(1)(a)(*ii*) is broad and includes as "abuse" not just "[c]riminal sexual conduct involving penetration" but also "attempted penetration[] or assault with intent to penetrate." Given that we agree with the trial court's finding that respondent's abuse of CB included criminal sexual conduct involving penetration, it is unnecessary to consider whether respondent's actions met the other described conduct.

abuse included criminal sexual conduct involving penetration. Therefore, MCL 722.638(1) was satisfied.

We next turn to MCL 722.638(2), which is met when "a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk[.]" When respondent sexually exploited CB, respondent unquestionably placed CB at an unreasonable risk of harm, not only by failing to take reasonable steps to intervene to eliminate the risk, but by actively creating the risk of harm. Therefore, the record evidence also supported that MCL 722.638(2) was satisfied.

To summarize, MCL 722.638(1)(a)(*ii*) requires a finding that (1) a parent or other listed individual (2) abused the child or a sibling of the child, and (3) the abuse included "[c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." That is, MCL 722.638(1)(a)(*ii*) requires proof that the parent or other listed individual abused the child or the child's sibling, but it does not require that the parent or other listed individual was the one who performed the act of criminal sexual conduct involving penetration. So long as the listed individual "abused" the child or a sibling, and the abuse "included" criminal sexual conduct involving penetration, the trial court may find that the circumstances of MCL 722.638(1)(a)(*ii*) have been demonstrated. Further, if the court makes a determination that the circumstances in *both* MCL 722.638(1) and MCL 722.638(2) have been demonstrated, DHHS is not obligated to make reasonable efforts to reunify the family. MCL 712A.19a(2)(a). Where reasonable efforts toward reunification are not required, the trial court may terminate parental rights at the initial disposition as contemplated by MCL 712A.19b(4).

12

In this case, both MCL 722.638(1)(a)(*ii*) and MCL 722.638(2) were satisfied.[10] Therefore, MCL 712A.19a(2)(a) applies, and reasonable efforts to reunify the children and family were not required. Accordingly, the trial court was permitted to terminate respondent's parental rights at the initial dispositional hearing.[11] The Court of Appeals erred by holding otherwise.[12]

## IV. ADVICE OF RIGHTS

Next, we consider whether the trial court's failure to advise respondent of her right to appeal the court's removal order was plain error affecting her substantial rights.

We review de novo the interpretation of court rules. *In re Mason*, 486 Mich at 152. MCR 3.993(A)(1) states that "any order removing a child from a parent's care and custody" is an order appealable by right. Therefore, MCR 3.965(B)(15) provides that "[i]f the court

---

[10] The same analysis applies with respect to ME because MCL 722.638(1) is satisfied if a parent "has abused the child *or a sibling of the child* and the abuse included . . . [c]riminal sexual conduct involving penetration[.]" MCL 722.638(1)(a)(*ii*) (emphasis added). Respondent's abuse of CB, ME's sibling, therefore satisfies MCL 722.638(1) as it relates to ME. If the triggering conditions of MCL 722.638(1)(a) are met, "the child" in MCL 722.638(2) refers to the abused child in MCL 722.638(1)(a), here, CB. And, again, when both conditions are met, reasonable efforts toward reunification are not required under MCL 712A.19a(2)(a).

[11] Because we find that MCL 722.638(1) and (2) are satisfied and that therefore the trial court did not err by terminating respondent's parental rights without first attempting reunification, we decline to address the LGAL and DHHS's alternative argument that termination at the initial disposition was permissible under MCL 722.638(3).

[12] Respondent also contends that clear and convincing evidence does not support a finding that she arranged for CB to be sexually exploited. See *In re Simonetta*, 507 Mich at 943. Like the Court of Appeals, however, we "find no issue with the trial court's underlying factual finding that CB was subjected to the sexual abuse alleged, which respondent either facilitated or knew about without intervening." *In re Barber/Espinoza*, ___ Mich App at ___ n 5; slip op at 8 n 5. Therefore, on this record, we conclude that clear and convincing evidence supported the trial court's findings.

13

orders removal of the child from a parent's care or custody, the court shall advise the parent . . . of the right to appeal that action." This issue was not preserved in the trial court, so we review it for plain error. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). To demonstrate plain error, a respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights." *In re Ferranti*, 504 Mich at 29. Further, "the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks, citation, and brackets omitted).

## A. COURT OF APPEALS

The Court of Appeals concluded that the trial court committed clear or obvious error by failing to advise respondent of her right to appeal the decision to remove the children. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 11. Contrary to our conclusion, the Court of Appeals held that respondent was prejudiced by what it believed to be the trial court's erroneous aggravated-circumstances finding, which "unquestionably affected the very framework within which this case progressed and undermined the foundation of the rest of the proceedings." *Id*. at ___; slip op at 12. The Court of Appeals reasoned that the aggravated-circumstances error occurred in conjunction with the removal of the children, thereby reasoning that "had the court instructed respondent of her appellate rights at this time as required, she very well could have succeeded on the aggravated-circumstances issue before the case proceeded immediately to termination." *Id*. at ___; slip op at 12.

14

## B. ANALYSIS

We agree with the Court of Appeals that the trial court plainly erred by failing to advise respondent of her right to appeal the removal order pursuant to MCR 3.965(B)(15). Although the LGAL and DHHS now argue that the children were not "removed" because they remained in their father's care, this argument reads the court rule too narrowly. At the time of the preliminary hearing, respondent shared joint legal custody with the nonrespondent-father and was entitled to parenting time with the children. The court's order eliminated her ability to participate in decisions about their care or exercise parenting time. See *In re AJR*, 496 Mich 346, 360-361; 852 NW2d 760 (2014) (explaining that physical and legal custody are distinct concepts and that legal custody pertains to "decision-making authority regarding the welfare of the child"); MCL 722.26a(7). The suspension of such rights constitutes a "removal" from respondent's care and custody, even though the order did not remove the children from her physical custody.[13] Moreover, the court rule uses mandatory language. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002) ("The phrases 'shall' and 'shall not' are unambiguous and denote a mandatory, rather than discretionary action."). Therefore, the trial court committed clear and obvious error by failing to advise respondent of her right to appeal the removal decision under MCR 3.965(B)(15).

---

[13] To read the court rule as narrowly as the LGAL and DHHS suggest could prove problematic and lead to unintended consequences. Under such a reading, for example, a parent who shares joint physical and legal custody would not be entitled to an appeal of right from a removal order if DHHS initiated a petition when the child was in the care of the nonrespondent-parent. To the extent other cases read the court rule more narrowly, we disavow them as incorrect. See, e.g., *In re AJR*, 342 Mich App 1, 6-7; 993 NW2d 1 (2022) (holding that "a child is removed from a parent's care and custody when he or she is taken from that parent's residence and placed in a different residence").

However, unlike the Court of Appeals, we are unconvinced that respondent has shown that the plain error affected her substantial rights. Respondent argues that the error precluded her from immediately challenging the trial court's incorrect finding that reasonable efforts toward reunification were not required. She notes that the trial court did not make a finding under MCL 712A.19a(2) at the preliminary hearing. Respondent appears to conflate the removal decision that takes place at the preliminary hearing with the aggravated-circumstances determination required under MCL 712A.19a(2)(a), which takes place at the initial dispositional hearing. At the preliminary hearing, the trial court must determine whether reasonable efforts have been made to prevent *removal*, MCR 3.965(C)(4), not whether reasonable reunification efforts between removal and termination may be excused, MCL 712A.19a(2). Moreover, the standard of proof at the preliminary hearing is the relatively low bar of probable cause. See MCR 3.965(B)(12); *In re Ferranti*, 504 Mich at 15. Given these considerations and the fact that we have concluded that the trial court properly determined that MCL 712A.19a(2)(a) excused the reasonable-efforts requirement, respondent cannot show that, had she been advised of her appellate rights after the preliminary hearing, the outcome of these proceedings would have been different. Accordingly, the Court of Appeals erred by concluding that respondent demonstrated outcome-determinative error.

## V. CONCLUSION

We conclude that the evidence in this case supported a finding that the requirements of both MCL 722.638(1) and (2) were satisfied. Therefore, the trial court correctly held that DHHS was not required to make reasonable efforts to reunify the family. MCL

16

712A.19a(2)(a).  We also hold that, although the trial court committed plain error by failing to advise respondent of her right to appeal the removal decision, the error was not prejudicial.  For these reasons, we reverse the judgment of the Court of Appeals and reinstate the order of the trial court terminating respondent's parental rights.

Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

*In re* BARBER/ESPINOZA, Minors.

No. 167745

BOLDEN, J. (*concurring*).

This case concerns questions about whether aggravated circumstances were present such that the trial court could terminate respondent's parental rights at the initial disposition. I agree fully with the majority's recitation of facts and determination that in this set of circumstances—where a trial court has found there was clear and convincing evidence that respondent sexually abused her child, CB, by exploiting CB through prostitution to obtain drugs—aggravated circumstances were present. However, I write separately to clarify that aggravated circumstances are found only in rare situations and must be considered on a case-by-case basis. Given that the circumstances here represent the rare case in which aggravated circumstances are met, I fully agree with the majority's decision to reinstate the trial court's order terminating respondent's parental rights.

I. TERMINATION OF PARENTAL RIGHTS

In Michigan, "[c]hild protective proceedings are governed by the juvenile code, MCL 712A.1 *et seq.*, and Subchapter 3.900 of the Michigan Court Rules." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). Accordingly, the state may only exercise protective powers over juveniles when specifically authorized by the juvenile code. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

Michigan generally divides child protective proceedings into two phases. *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). In most cases, the first stage is the adjudicative phase, during which the trial court considers whether to authorize a petition such as the one filed here by the Department of Health and Human Services (DHHS); in this phase, the court determines whether, under MCL 712A.2(b), statutory grounds exist for the trial court to assume jurisdiction over the child.[1] *In re Sanders*, 495 Mich at 404. If the trial court authorizes the petition and assumes jurisdiction over the child, the case proceeds to the dispositional phase, during which the court determines the course of action it will take to ensure the child's safety and well-being. *Id*., citing *In re Brock*, 442 Mich at 101. The trial court's authority to enter orders during the dispositional phase is found in MCL 712A.6. One of the actions the trial court may take—the one taken here—is to terminate the respondent's parental rights to the children over whom jurisdiction was taken. MCL 712A.19b. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). If parental rights are terminated, the child is placed in the custody of the court. MCL 712A.19b(1).

In *most cases*, the two-step process that must occur before parental rights may be terminated involves several hearings and additional statutory requirements or procedures

---

[1] The parental rights of a respondent may not be terminated unless termination was requested in an original, amended, or supplemental petition by DHHS; the child; the guardian, legal custodian, or representative of the child; a concerned person defined in MCL 712A.19b(6); the state children's advocate; or the prosecuting attorney. MCR 3.977(A)(2). Here, the initial petition was filed by DHHS.

DHHS may take. For example, ordinarily, before parental rights may be terminated, the trial court must conduct periodic review hearings and may enter orders providing for services, placement, and visitation with the children. *In re Sanders*, 495 Mich at 406-407, citing MCR 3.973(F), MCR 3.974, and MCR 3.975. In those instances, DHHS must provide the court with a case service plan designed to "provide for placing the child in the most family-like setting available and in as close proximity to the child's parents' home as is consistent with the child's best interests and special needs." MCL 712A.18f(3); see also *In re Sanders*, 495 Mich at 407. Importantly, "[r]easonable efforts to reunify the child and family must be made *in all cases* except those involving the circumstances delineated in MCL 712A.19a(2)." *In re Simonetta*, 507 Mich 943 (2021) (emphasis added).[2]

---

[2] MCL 712A.19a(2) states, in part, as follows:

> Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:
>
> (a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.
>
> (b) The parent has been convicted of 1 or more of the following:
>
> (*i*) Murder of another child of the parent.
>
> (*ii*) Voluntary manslaughter of another child of the parent.
>
> (*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.
>
> (*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

Reaching a disposition in a child protective proceeding is a deliberate process that, although governed by statute and court rules, balances the state's interest of protecting the health and safety of minor children with the parents' constitutional right to parent their children. *In re Sanders*, 495 Mich at 421. In particular, the Fourteenth Amendment of the United States Constitution ensures that no state shall "deprive any person of life, liberty, or property without due process of law[.]" US Const, Am XIV, § 1. Substantive due process, part of this amendment, " 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *In re Sanders*, 495 Mich at 409, quoting *Washington v Glucksberg*, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997). "Among these fundamental rights" with heightened protection "is the right of parents to make decisions concerning the care, custody, and control of their children," colloquially known as the constitutional right to parent one's children. *In re Sanders*, 495 Mich at 409, citing *Meyer v Nebraska*, 262 US 390, 399-400; 43 S Ct 625; 67 L Ed 1042 (1923); see *Santosky v Kramer*, 455 US 745, 752-754; 102 S Ct 1388; 71 L Ed 2d 599 (1982) (recognizing that natural parents have a fundamental liberty interest in the care, custody, and management of their children). "In parental rights termination proceedings, the private interest affected is commanding[.]" *Id*. at 758. For a parent, "the

---

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

(d) The parent is required by court order to register under the sex offenders registration act.

Here, the question is whether respondent met the aggravated circumstances enumerated in MCL 722.638(1) and (2). MCL 712A.19a(2)(a).

4

consequence of an erroneous termination is the unnecessary destruction of their natural family." *Id*. at 766.

The juvenile code must balance the state's crucial interest of protecting the health and safety of minor children against the due-process right to parent. *In re Sanders*, 495 Mich at 421. Due process must be ensured before the fundamental right to parent is terminated. See *id*. at 421-422. That background is important in considering how child protective proceedings typically work. Generally, the first step in child protective proceedings, the adjudicative phase, "is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *Id*. at 405-406 (quotation marks, citation, and brackets omitted). A formal adjudication divests the respondent-parent of their constitutional right to parent and gives that authority to the state. *In re Ferranti*, 504 Mich at 16. Under only limited circumstances can a court terminate parental rights at the initial dispositional hearing. See *In re Sanders*, 495 Mich at 406 ("If certain requirements are met, the court can terminate parental rights at the initial dispositional hearing[.]"), citing MCR 3.977(E). This case illustrates those circumstances, where termination of parental rights was sought and granted at the initial disposition. Thus, in these rare cases where there is no requirement that DHHS make reasonable efforts at reunification, it is especially important that the statutory framework is followed to ensure that the respondent's constitutional right to parent is protected.

A trial court may exercise its discretion to terminate parental rights during the initial disposition if the petition seeks to terminate parental rights and the court determines that the statutory grounds for termination are met. MCL 712A.19b(4) and (5). MCR 3.977(E)

5

outlines the procedure trial courts must follow when evaluating a petition that seeks to terminate the parental rights of a respondent at the initial disposition:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> (a) are true, and
>
> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);
>
> (4) termination of parental rights is in the child's best interests.

Here, DHHS sought termination of respondent's parental rights in its initial petition. The trial court reviewed the petition, conducted a preliminary hearing, suspended respondent's parenting time, and authorized the petition. *In re Barber/Espinoza*, ___ Mich App ___, ___; ___ NW3d ___ (September 19, 2024); slip op at 2. Specifically, the trial court held that reasonable efforts to prevent or eliminate the removal of the children from respondent's care were not required because of aggravated circumstances. *Id*. at ___; slip op at 2. The trial court proceeded with termination during the initial disposition after

6

determining that aggravated circumstances were demonstrated. *Id*. at ___; slip op at 2; see MCL 712A.19a(2)(a).

MCL 712A.19b(3) lists several authorized grounds for terminating parental rights and requires that evidence of those grounds be shown by clear and convincing evidence.[3] The court found that each of the three statutory grounds asserted were proved by clear and convincing evidence. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 2. Finally, the trial court held that termination was in the children's best interests. *Id*. Having found that there were statutory grounds to assume jurisdiction and that it was in the children's best interests to terminate respondent's parental rights, the trial court entered an order of termination. MCL 712A.19b(5).

The key question in this case is whether DHHS established, "on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing," that respondent's actions constitute aggravated circumstances. MCR 3.977(E); see also *In re Simonetta*, 507 Mich at 943 (requiring courts to "articulate a factual finding based on clear and convincing

---

[3] In the petition, multiple grounds for termination were presented. The petition first asserted that respondent's acts caused physical injury or physical or sexual abuse to the child or a sibling of the child and that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future in respondent's home. MCL 712A.19b(3)(b)(*i*). Next, the petition asserted that the child or a sibling of the child has suffered physical injury or physical or sexual abuse and respondent, who had the opportunity to prevent the physical injury or sexual abuse, failed to do so, and there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in respondent's home. MCL 712A.19b(3)(b)(*ii*). Finally, the petition asserted that there is a reasonable likelihood, based on the conduct or capacity of respondent, that the child will be harmed if the child is returned to respondent's home. MCL 712A.19b(j).

7

evidence that aggravated circumstances exist such that services are not required"). It is imperative that the statute and court rules be followed precisely because they are designed to protect both the well-being of a child and a respondent-parent's constitutional right to parent. See *Santosky*, 455 US at 752-754 (recognizing that natural parents have a fundamental liberty interest in the care, custody, and management of their children); *In re Ferranti*, 504 Mich at 16 (explaining that a formal adjudication divests the respondent of their constitutional right to parent and gives that right to the state).

## II. AGGRAVATED CIRCUMSTANCES

The trial court determined that reunification efforts were not required because of aggravated circumstances. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 2. Whether sexually exploiting a child through prostitution is an action that establishes aggravated circumstances, meeting the MCL 712A.19a(2)(a) exception, is a matter of statutory interpretation, which we review de novo. *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022).[4] I entirely agree

---

[4] The parties do not argue a standard of review. This case would appear to me to present a threshold question of law and a question of fact. Whether sexually exploiting a child through prostitution could meet the statutory definition of aggravated circumstances is a question of law. Whether the judicial determination that aggravated circumstances existed based on the evidence presented and whether termination was properly supported both involve questions of fact, which we review for clear error. See *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000) ("We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest."). I conclude that there was no clear error present in this case, and consequently, I agree with the majority's decision to reverse the Court of Appeals and reinstate the trial court's order terminating respondent's parental rights. Therefore, I only address the matter of statutory interpretation.

with the majority's statutory interpretation but present a summary analysis to help provide context.

Again, the statutory authority for determining that reasonable efforts to reunify the child and family are not required because of aggravated circumstances is expressed in MCL 712A.19a(2)(a). "Reasonable efforts to reunify the child and family must be made in all cases *except* if," relevant to this case, "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 712A.19a(2)(a) (emphasis added).[5] Those aggravated circumstances are then enumerated, as referenced, in MCL 722.638(1) and (2).

---

[5] In our order directing supplemental briefing for oral arguments, we asked, among other questions, "whether [DHHS] satisfied the requirements of MCL 722.638(3)" and "if so, whether the termination of the respondent's parental rights should be affirmed under that provision[.]" *In re Barber/Espinoza*, ___ Mich ___, ___; 15 NW3d 599, 599 (2025). MCL 722.638(3) states that

> [i]f the department is considering petitioning for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b, even though the facts of the child's case do not require departmental action under subsection (1), the department shall hold a conference among the appropriate agency personnel to agree upon the course of action. The department shall notify the attorney representing the child of the time and place of the conference, and the attorney may attend. If an agreement is not reached at this conference, the department director or the director's designee shall resolve the disagreement after consulting the attorneys representing both the department and the child.

In their joint supplemental brief, petitioner and the lawyer-guardian ad litem argue that the requirements of Subsection (3) were met and that this Court should affirm the trial court's termination under that provision. Whether the statutory requirements of Subsection (3) were met here seems to be inapposite to the question of whether termination of parental rights could be affirmed under those grounds.

MCL 722.638(1) requires that "[t]he department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2," if one or more enumerated circumstances exist. Because § 2(b) is the section of the juvenile code referring to jurisdiction in child protective proceedings, MCL 722.638(1) places an affirmative obligation on DHHS to submit a petition for the court's authorization in certain enumerated circumstances. See *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 409; 716 NW2d 236 (2006) ("The Legislature's use of the word 'shall' in a statute generally 'indicates a mandatory and imperative directive.' ") (citation omitted). The enumerated circumstances at issue here involve MCL 722.638(1)(a)(*ii*), which states that a petition for authorization must be filed when "[t]he department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted

---

It is the juvenile code that provides the court with statutory authority to conduct child protective proceedings. *In re Ferranti*, 504 Mich at 14. MCL 722.638(3) is not within the juvenile code, but the Child Protection Law, MCL 722.621 *et seq*. None of the termination provisions or procedural statutes guiding child protective proceedings refers to Subsection (3). Although MCL 722.638 is incorporated by reference within the juvenile code, the juvenile code refers only to Subsections (1) and (2), both of which must be met to meet the aggravated-circumstances exception to the rule that reasonable reunification efforts are required before parental rights may be terminated. MCL 712A.19a(2)(a). "The Legislature is presumed to have intended the meaning it has plainly expressed, and if the expressed language is clear, judicial construction is not permitted and the statute must be enforced as written." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748; 641 NW2d 567 (2002) (citation omitted). MCL 712A.19a(2)(a) unambiguously cedes no authority to MCL 722.638(3) to provide an independent pathway toward terminating parental rights or eliminating any requirements on the deliberate pathway toward that disposition. Particularly where the juvenile code must fill the role of safeguarding a due-process right that protects a "commanding" private interest, *Santosky*, 455 US at 758, I conclude that Subsection (3) provides no pathway for affirming the termination of parental rights.

penetration, or assault with intent to penetrate." DHHS determined that respondent had exploited CB through prostitution. The facts established that respondent is CB's parent, that respondent abused CB, and that the abuse *included* criminal sexual conduct involving penetration. I fully agree with the majority's analysis that all statutory elements were met and that MCL 722.638(1) required DHHS to file a petition for authorization.

Next, MCL 722.638(2) provides that

> [i]n a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

Subsection (2) therefore adds an additional affirmative requirement that DHHS's petition also include a request for termination of parental rights *at the initial disposition* if the *parent* is suspected of perpetrating the enumerated abuse under Subsection (1) or of placing the child at an unreasonable risk of harm due to the *parent*'s failure to take reasonable steps to intervene to eliminate the risk. See *Costa*, 475 Mich at 409 (explaining that "shall" is a mandatory directive).

The distinction between MCL 722.638(1) and (2) turns on who allegedly perpetrated the abuse and that person's relationship to the child. MCL 722.638(1) pertains to a broader array of actors than just the parent—i.e., "a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home" who perpetrates the abuse—but it does not require DHHS to petition for termination at the initial disposition. MCL 722.638(2) then adds the requirement that when the parent either perpetrated the abuse that DHHS determined existed under MCL

11

722.638(1), or the parent placed the child at an unreasonable risk of harm from that abuse, DHHS must include in the petition a request to terminate at the initial disposition.

In other words, when DHHS determines that one or more of the listed actors perpetrated an enumerated abuse of a child, DHHS is required to file a petition for authorization; when DHHS determines that a parent, specifically, actively perpetrated the abuse or placed the child at an unreasonable risk of that abuse, DHHS is required to petition for termination of parental rights at the initial disposition. When both conditions are met, the trial court is not required to order that reasonable efforts toward reunification be made, nor is it required to reach a disposition terminating parental rights through two separate phases. MCL 712A.19a(2)(a); MCL 712A.19b(4). The trial court may terminate parental rights if it finds that a statutory ground for termination has been established by clear and convincing evidence and that termination is in the child's best interests. MCL 712A.19b(3) and (5).

I fully agree with the majority. Here, both conditions were met under MCL 722.638(1) and (2). DHHS had an affirmative obligation to petition for termination of respondent's parental rights at the initial disposition, and the trial court was authorized to proceed to terminate during the initial disposition, as followed.

### III. PRIOR COURT OF APPEALS CASELAW

The Court of Appeals held that the aggravated circumstances set forth in MCL 722.638(1)(a)(*ii*) were not met because the abuse was perpetrated by an actor other than respondent given that the actor who committed the criminal sexual conduct including penetration was not a parent, guardian, or custodian of CB, and never resided in CB's

home. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 7-8. I agree with the majority that this was an erroneous reading of MCL 722.638(1). But in arriving at its interpretation, the Court of Appeals asserted that two prior panels of that Court had conflicting interpretations of MCL 722.638. *Id*. at ___; slip op at 5-6 (comparing *In re Boyce*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2020 (Docket No. 348992), with *In re Bergren*, unpublished per curiam opinion of the Court of Appeals, issued June 3, 2021 (Docket No. 354767)). Although *In re Boyce* and *In re Bergren* reached different results when applying the statute to their facts, it is an oversimplification to read the cases as presenting conflicting interpretations of MCL 722.638.[6]

*In re Boyce* was decided first. In that case, the respondent admitted to police that she allowed her 12-year-old daughter to engage in sexual acts with multiple older males, including a 34-year-old male whom the respondent said she believed to be a teenager. *In re Boyce*, unpub op at 4. The Court of Appeals did not analyze the meaning of MCL 722.638, but rather, concluded that there was no error in the trial court's assessment that reunification efforts were not required because, "[o]n this record, the court could easily determine that [the daughter] was the victim of '[c]riminal sexual conduct involving penetration' and that respondent 'plac[ed] the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk.' " *Id*. (third

_____

[6] As the Court of Appeals noted, and MCR 7.215(C)(1) states, unpublished Court of Appeals opinions are not precedentially binding under the rule of stare decisis. *In re Barber/Espinoza*, ___ Mich App at ___ n 2; slip op at 5 n 2. The Court of Appeals considered both cases to be persuasive or instructive. *Id*. at ___ n 2; slip op at 5 n 2, quoting *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

13

and fourth alterations in original).  Notably, the Court of Appeals reviewed for clear error the trial court's factual findings.  *Id*. at 3.

The following year, the Court of Appeals issued *In re Bergren*.  In that case, the facts were as follows:

> Respondent, a single father of AB, married S. Johnson, a divorced mother of four children, in 2014.  The blended family resided together until a divorce in January 2018.  At that time, respondent and AB moved out of Johnson's home and into an apartment.  In approximately August 2018, respondent and Johnson reconciled and, as a consequence, respondent and AB resumed living in the family home.  At that time, Johnson's son, LJ, had elected to attend school in his mother's community; consequently, he too was living full-time in the home.
>
> In January 2019, AB disclosed to her best friend's mother and occasional babysitter that sexual activity had been occurring between her and LJ.  At the time, AB was 11 years old and LJ was 13.  On January 26, 2019, the babysitter contacted respondent to inform him of AB's disclosures.  Children's Protective Services ("CPS") began an investigation on January 28, 2019, and a criminal investigation similarly ensued.  After AB's forensic interview in February 2019, petitioner, the [DHHS], filed a petition seeking termination of respondent's parental rights at the initial dispositional hearing. [*In re Bergren*, unpub op at 1.]

The Court of Appeals reversed the trial court's determination that reasonable efforts for reunification were not required because the perpetrator of the sexual abuse was less than 18 years old and was neither a parent, guardian, nor custodian of the child, so the requirements of MCL 722.638(1) were not met.  *Id*. at 3-4.  Notably, the Court of Appeals panel in *In re Bergren* also did not interpret MCL 722.638(1) and merely applied the facts of the case to conclude that the trial court's determination was clearly erroneous.  *Id*. at 5.[7]

---

[7] The trial court in *In re Bergren* also concluded that MCL 722.638(1) was not met but that because the requirements of MCL 722.638(2) were met, reasonable reunification efforts were not required.  The *In re Bergren* panel reversed the trial court on the grounds that if

14

Here, the Court of Appeals was incorrect that the different results of whether reasonable reunification efforts were required in *In re Boyce* and *In re Bergen* meant that there was a conflicting statutory interpretation of MCL 722.638(1). Rather, neither previous panel interpreted MCL 722.638(1), and certainly, neither opinion "instructs that criminal sexual conduct as an aggravating circumstance must be committed by a parent or other specifically listed person in MCL 722.638(1)(a)," as the panel believed *In re Bergren* to hold. *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 7. Moreover, the different results in both cases do not necessarily mean that one case was incorrect. Instead, both panels performed clear-error review to determine whether the facts of each case met the aggravated-circumstances requirements of MCL 712A.19a(2)(a). Appellate review of aggravated-circumstances cases ought to carefully focus on the specific facts and circumstances of each case to determine whether all the necessary statutory requirements were met. To the extent that the incongruent *results* reached by the two prior panels led the Court of Appeals to now conclude, definitively, that the aggravated circumstances of MCL 722.638(1) could not be met in cases in which a parent exploits their child through prostitution or sexual exploitation, the Court of Appeals misread both the caselaw and the statute.

___

MCL 722.638(1) was not met, MCL 722.638(2) was inapplicable. The Court of Appeals statutory interpretation comports with my interpretation of MCL 722.638(2): The requirements of MCL 722.638(1) must be met as a prerequisite before MCL 722.638(2) may be met. More importantly, MCL 712A.19a(2)(a) requires that *both* aggravated circumstances from MCL 722.638(1) and (2) be met for a trial court to except the requirement that reasonable efforts to reunify the child and family be provided before termination.

15

## IV. CONCLUSION

I agree in full with the majority's conclusion and analysis. Aggravated circumstances are present under MCL 712A.19a(2)(a) if all elements of both MCL 722.638(1) and (2) are met. If DHHS determines that both subsections are met, DHHS has an affirmative obligation to petition a court for authorization and to seek termination at the initial disposition. Then, the court may exercise its discretion to terminate a respondent's parental rights during the initial dispositional hearing. Exploiting one's child through prostitution may meet the statutory elements depending on the facts, circumstances, and evidence of each case.

Aggravated circumstances are rare. They present the exception to the rule that parental rights are not to be terminated absent reasonable efforts to reunify the child and the family as well as the general rule that child protective proceedings involve two distinct phases. The juvenile code seeks to balance the important state interest of protecting children with the constitutional right to parent. It is key, then, that the statutes and court rules governing child protective proceedings be followed closely to ensure that all interests are met, particularly when an exception to the general two-phase proceedings process applies, such as when aggravated circumstances are present. Thus, it is imperative that trial courts ensure that when DHHS performs its statutorily required mandate to petition the court to seek termination of parental rights at the initial dispositional hearing, under MCL 722.638(1) and (2), all facts, evidence, and circumstances permit the conclusion that termination may occur during the hearing and without the provision of reasonable reunification efforts. MCL 712A.19a(2)(a). Here, I agree with the majority that the trial court did not commit reversible error, and I fully agree with the disposition to reverse the

16

judgment of the Court of Appeals and reinstate the order of the trial court terminating respondent's parental rights.

Kyra H. Bolden

THOMAS, J., did not participate because she may have independent knowledge regarding this case.

HOOD, J., did not participate because the Court considered this case before he assumed office.